IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

RONALD A. JOHNSON,           )
                             )
        Plaintiff,           )
                             )
            v.               )      1:05cv310 (JCC)
                             )
FRANCIS J. HARVEY, SECRETARY )
OF THE ARMY,                 )
                             )
        Defendant.           )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment. Plaintiff Johnson filed this race discrimination, age discrimination, and retaliation suit against the Army. For the reasons stated below, the Court will deny Defendant's Motion to Dismiss and deny Defendant's Motion for Summary Judgment.

**I. Background**

Plaintiff Ronald A. Johnson, an African American man born on October 6, 1959, was employed by the Department of the Army from 1984 until August 6, 2000. Johnson filed this suit against the Army alleging race discrimination, age discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1).

For over fifteen years, Johnson worked as a "temporary" or "term" carpenter for the Army at the Carpentry Shop at Fort A.P. Hill, ("FAPH,") in Virginia.  During that time, Johnson was employed as a WG-1607-9, ("WG-9"), Carpenter and is now employed as a WG-9 at FAPH working for a government contractor.  This suit arises out of the Defendant's failure to hire Johnson on a permanent basis.

Johnson alleges that in June 2000, although his superiors knew he wanted permanent employment, they hired instead two unqualified white men who were younger than him, Joe Dougher and Hal Zarecki.  Dougher and Zarecki were permanent Army employees at FAPH; Dougher was a Police Lieutenant and Zarecki was a Police Investigator.

Bruce Hopkins is the Deputy Commander at FAPH.  Hopkins is a Caucasian male and was 52 years old at the time Johnson was not selected in 2000.  Hopkins was Johnson's third-level supervisor.

In November 1999, Dougher and Zarecki were removed from their law enforcement positions as disciplinary action for violating hunting regulations.  Hopkins made the decision to temporarily assign them in 2000 to the Carpentry Shop.  (Def.'s Ex. 4 at 62-63).  They were assigned to permanent positions for which Johnson claims he should have been considered.  Hopkins asked Johnson's first-line supervisor Earl Erbin for his input

-2-

prior to assigning Dougher and Zarecki.  (Def.'s Ex. 4 at 87).
Erbin's only response was that Dougher and Zarecki were
acceptable.  (*Id.*, Def.'s Ex. 3 at 107-08).  Johnson agrees that
Hopkins made the decision to assign Dougher and Zarecki to the
carpentry shop in 2000.  (*See* Pl.'s Opp'n at 3).

Johnson also alleges that he was not hired for a
permanent position in June 2000 in retaliation for signing an
affidavit in support of fellow FAPH African American carpenter,
Ross Jackson, who had filed a discrimination complaint against
Erbin.  Erbin is a Caucasian male and was 46 years old when
Johnson was not selected in 2000.  Johnson alleged in his
Complaint that Erbin knew about the affidavit and held that
against him.  However, in his Opposition to the Defendant's
alternative motions, Johnson claims that Erbin only knew that
Johnson was going to testify at the Jackson hearing and did not
know how Johnson was going to testify.

Johnson also alleges that before hiring Dougher and
Zarecki in June 2000, his supervisors hired Steve Peters, Richard
Clentimack, and Link Cherry, other white men, for permanent
appointments.  Peters was hired on June 9, 1996, (Def.'s Ex. 5),
and Clentimack was hired on November 9, 1997.  (Def.'s Ex. 6).
The record does not show when Cherry was hired.  Johnson claims
that he was not hired for these permanent positions in 1996 and
1997 based on race discrimination.

-3-

Johnson contacted the Equal Employment Opportunity Commission, ("EEOC,") on July 3, 2000.  (Def.'s Ex. 14).  He filed a complaint with the EEOC on August 31, 2000.  (Def.'s Ex. 15).  He was provided a right to sue letter on December 16, 2004. (Def.'s Ex. 19).  He filed this Complaint on March 21, 2005.  The Complaint alleges claims for: (1) race discrimination for hiring Peters, Clentimack, and Cherry in 1996 and 1997; (2) race and age discrimination for hiring Dougher and Zarecki in June 2000; and (3) retaliation, i.e. not hiring him in June 2000 because he signed an affidavit in support of Jackson's discrimination complaint against Erbin.  Johnson seeks permanent employment at Fort A.P. Hill, back pay, and any other damages to which he is entitled.

On May 19, 2005, Defendant filed a motion to dismiss, or in the alternative, a motion for summary judgment. Defendant's alternative motions are currently before the Court.

## II. Standard of Review

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1). Where subject matter jurisdiction is challenged, the factual allegations are assumed true.  *See Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).  If, however, "the motion challenges the actual existence of the Court's subject matter jurisdiction, . . . the Court may 'look beyond the jurisdictional

-4-

allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"  *Id.* (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994)).  The burden of proving subject matter jurisdiction is on the plaintiff.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)(citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See* Fed. R. Civ. P. 56(c).  The party seeking summary judgment has the initial burden to show the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials; a "mere scintilla" of evidence is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 248-52. A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party. *See id.* at 255. Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. When a motion for summary judgment is made, the evidence presented must always be construed in the light most favorable to the nonmoving party. *See Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996)(en banc).

-6-

## III. Analysis

### A. Administrative exhaustion

As a threshold matter, the Court must determine whether Johnson has exhausted his administrative remedies.  A federal employee must exhaust all available administrative remedies before bringing an employment discrimination complaint to federal court pursuant to Title VII.  *See* 42 U.S.C. § 2000e-16(c); *Brown v. General Serv. Admin.*, 425 U.S. 820, 832 (1976); *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 968-69 (4th Cir. 1985).  As set forth in the Code of Federal Regulations:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(2005).

The requirement that an employee exhaust administrative remedies by timely filing a charge with the EEOC prior to bringing a Title VII action is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002)(quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

Johnson contacted the EEOC on July 3, 2000.  (Def.'s Mot., Ex. 14).  Defendant argues that Johnson failed to administratively exhaust any claims that he was denied a permanent position prior to 2000 because he did not contact the EEOC within 45 days of the effective date of the action.  Peters, Clentimack, and Cherry were hired in 1996 and 1997.  Johnson does not dispute these dates and admits that they were hired before 2000.

Johnson argues that his pre-2000 claims should not be dismissed because: (1) the EEOC considered the claims so the Court should also consider them; and (2) the "continuing violation" theory allows him to bring in acts of discrimination outside of the 45-day statutory period.

A federal agency, by merely accepting and investigating a tardy complaint, does not automatically waive its objection to the complainant's failure to comply with the prescribed time delays.  *Oaxaca v. Roscoe*, 641 F.2d 386, 390 (5th Cir. 1981); *Saltz v. Lehman*, 672 F.2d 207, 208 (D.C. Cir. 1982); *see also Kannapel v. Hudson*, 1993 WL 498234, at *10 (4th Cir. 1993)("At least one sister circuit has supported [the] view [that equitable tolling or estoppel do not remedy the Plaintiff's failure to timely submit her administrative complaint] by recognizing that an EEO counselor's decision to investigate a complaint does not create a claim for equitable estoppel or equitable tolling.")

(citing *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992)).  In *Rowe*, the court of appeals cited *Oaxaca* and held that by docketing and acting on the plaintiff's request for reconsideration, the agency did not waive a timeliness objection because it did not make a specific finding that the plaintiff's submission was timely.

However, if the agency accepts a complaint, investigates it, and decides it on the merits, all without mentioning timeliness, the agency is barred from later arguing that the complaint was untimely.  *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997); *see also Saltz v. Lehman*, 672 F.2d 207, 208 (D.C. Cir. 1982); *Brown v. Marsh*, 777 F.2d 8, 18 n.2 (D.C. Cir. 1985)(Starr, J., dissenting).  Although the Fifth Circuit only finds waiver where the decision on the merits is a finding of discrimination, *see Oaxaca*, 641 F.2d at 390, the Fourth Circuit has yet to address this issue.

The Court finds that the policy reasons for enforcing the timely filing requirement do not apply where the agency has made a decision on the merits, no matter what that decision is.  As the D.C. Circuit explained: "[h]ad [the agency] been concerned that information needed to resolve [the plaintiff's] complaint was stale or that deciding his case would upset settled expectations--traditional objectives of statutes of limitations--it could easily have raised the . . . [issue of the

time] limitation during the administrative process."  *Bowden*, 106

F.3d at 439.

At oral argument in the instant case, the Defendant

relied on *Scott v. Weinberger*, 416 F.Supp. 221 (D.D.C. 1976), for

the proposition that a finding of discrimination is required for

waiver.  The court in that case found that the agency had waived

its timeliness objection when it made a finding of

discrimination.  *Id.* at 223-24.  However, the court reached its

decision because statutes of limitations:

> are designed to promote justice by preventing surprises
> through the revival of claims that have been allowed to
> slumber until evidence has been lost, memories have
> faded, and witnesses have disappeared.  The theory is
> that even if one has a just claim, it is unjust not to
> put the adversary on notice to defend within the period
> of limitation and that the right to be free of stale
> claims in time comes to prevail over the right to
> prosecute them.

*Id.* at 224 (quoting *Order of R.R. Telegraphers v. Ry. Express
Agency*, 321 U.S. 342, 348-49 (1944)).

The court noted that these are the reasons for the

statutory requirement for filing an EEO claim within a certain

period.  Yet the court found that these reasons are inapplicable

where the agency has done its own investigation and made a

finding of discrimination because:

> there is no "surprise" claim and the complaint itself
> does not require agency investigation of a stale claim.
> The Agency has already taken it upon itself to pursue
> and complete the required investigation.  Under these
> circumstances there is a distinct lack of prejudice to
> the defendants, and the statute of limitations should
> not apply to bar these complaints.

*Id.*

That reasoning applies to the instant case despite the fact that the Defendant's decision on the merits was that Johnson was not the victim of discrimination.  The Defendant has already done an investigation into the pre-2000 claims, so it faces no prejudice if these claims move forward.

By investigating the pre-2000 claims and reaching a decision on the merits, the Defendant waived any timeliness objection.  Johnson's pre-2000 claims are not barred for failure to exhaust administrative remedies and the Court need not address Johnson's "continuing violation" argument.  The Court will deny Defendant's motion to dismiss Johnson's pre-2000 claims.

**B. Summary judgment motion**

In its Motion for Summary Judgment, Defendant argued that for any claim that Johnson properly administratively exhausted, Defendant is entitled to summary judgment because: (1) Johnson cannot establish a prima facie case of disparate treatment based on his race or age; (2) Johnson cannot establish a prima facie case of retaliation; and (3) even if Johnson could establish a prima facie disparate treatment or retaliation claim, he cannot rebut the Army's legitimate, non-discriminatory reasons for the alleged adverse actions.

Johnson argues that he needs to conduct discovery in order to determine if genuine issues of material fact exist. Discovery has not begun and the case has not yet been set for

trial.  Specifically, Johnson wants discovery to: (1) determine whether the Defendant had the intent or motive to discriminate against Johnson based on race, age, and retaliation when it did not hire him for permanent Carpenter positions; (2) determine if FAPH management planned its actions so that the WG-9 Carpenter job would not be posted, essentially precluding Johnson from competing and establishing that the Defendant's legitimate business reasons for the selection of Dougher and Zarecki were pretextual; (3) obtain testimony from Denise Bayliss, Employee Relations Specialist at FAPH regarding how or why the last chance agreements[1] superceded the Priority Placement Program process and her opinion that Johnson should have been disciplined for an infraction; (4) obtain information about last chance agreements and their impact on the Defendant's hiring procedures; and (5) obtain a copy of Johnson's testimony from the Jackson discrimination case.

In its Reply, the Defendant all but admits that Johnson's age and race discrimination allegations for the 2000 job appointments establish a prima facie case necessitating discovery of the Defendant's legitimate non-discriminatory

---

[1] The last chance agreements state that, in recognition of their length of service, performance record, and willingness to rehabilitate, Dougher and Zarecki, if qualified, agreed to accept a position change to the lower grade and position of carpentry worker.  (Def.'s Exs. 8, 9).  Under the agreements, the Defendant agreed to hold the pending removals in abeyance for two years and, subject to Dougher and Zarecki complying with the agreement, all records relating this the action would be purged from the Defendant's records.  (*Id.*)

reasons.  (*See* Def.'s Reply at 2).  He also agreed at oral

argument that discovery on these claims is required.  However,

Defendant argues that Johnson cannot establish a prima facie case

of retaliation and that this claim is ripe for summary judgment.

The Court will deny the motion for summary judgment on the age

and race discrimination claims and now consider the retaliation

claim.

The test for proving prima facie retaliatory discharge

under 42 U.S.C. § 2000e-3(a) requires that: (1) plaintiff engaged

in protected activity; (2) the employer took adverse employment

action against plaintiff; and (3) a causal connection existed

between the protected activity and the adverse action.  *Causey v.*

*Balog*, 162 F.3d 795, 803 (4th Cir. 1998).  To meet the third

requirement, the plaintiff must show that the adverse action

would not have occurred "but for" the protected conduct.  *Ross v.*

*Communications Satellite Corp.*, 759 F.2d 355, 365-66 (4th Cir.

1985)*(overruled on other grounds by Price Waterhouse v. Hopkins*,

490 U.S. 228 (1989)).  With regard to the third requirement, the

plaintiff must also show that the actual decisionmaker, the

person principally responsible for the adverse employment action,

or someone with disciplinary authority had knowledge that the

plaintiff engaged in protected activity.  *Hill v. Lockheed Martin*

*Logistics Mgmt., Inc.*, 354 F.3d 277, 298-99 (4th Cir. 2004); *see*

*also Dowe v. Total Action Against Poverty in Roanoke Valley*, 145
F.3d 653, 657 (4th Cir. 1998).

Once the plaintiff establishes the elements of her
prima facie case, the burden shifts to the employer to proffer
evidence of a legitimate, non-discriminatory reason for taking
the adverse employment action.  *Matvia v. Bald Head Island Mgmt.,
Inc.*, 259 F.3d 261, 271 (4th Cir. 2001)(citation omitted).  If
the employer carries its burden, "the plaintiff must then have an
opportunity to prove by a preponderance of the evidence that the
legitimate reasons offered" were pretextual.  *Id.*

Defendant argues that Johnson cannot establish a prima
facie case because the decisionmaker on the 2000 job appointments
did not have actual knowledge of Johnson's protected activity.
In order to establish the third element of a prima facie case,
Johnson must show that the actual decisionmaker, the person
principally responsible for the adverse employment action, or
someone with disciplinary authority had knowledge that Johnson
was going to testify in support of Jackson.  *Hill*, 354 F.3d at
298-99); *see also Dowe* (citing *Grizzle v. Travelers Health
Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994)(dismissing claim
because no evidence that relevant decisionmaker knew that
plaintiff had complained of discrimination); *Hudson v. S. Ductile
Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988)(dismissing
claim because relevant decisionmaker was unaware that plaintiff

had filed a complaint with the EEOC); *Talley v. United States Postal Serv.*, 720 F.2d 505, 508 (8th Cir. 1983)(dismissing claim because no evidence that supervisor who made adverse personnel decision was aware that plaintiff had engaged in a protected activity).

Hopkins and Erbin knew that Johnson was going to testify at the Jackson hearing, but did not know that Johnson was going to testify in favor of Jackson. (*See* Def.'s Ex. 3 at 101-03, 125-27; Def.'s Ex. 12 at 13). Johnson argues that since Johnson told the Defendant that his testimony would actually support Jackson's allegations, and he alleges retaliation against the Defendant, he has established a prima facie case. In addition, Johnson argues that the temporal connection between the time he notified the Defendant about his testimony in late 1999 or early 2000, the settling of the Jackson case by the Defendant on April 17, 2000, and the hiring of Dougher and Zarecki on June 16, 2000, shows the causal connection. Finally, Johnson alleges that during this time, he was given the most difficult jobs, kept constantly working when others had little to do, and subjected to unsupported charges by Erbin on July 13, 2000, all in retaliation for his protected activity.

Rule 56(f) provides:

> Should it appear from the affidavits of a party
> opposing the motion that the party cannot for reasons
> stated present by affidavit facts essential to justify
> the party's opposition, the court may refuse the

-15-

> application for judgment or may order a continuance to
> permit affidavits to be obtained or depositions to be
> taken or discovery to be had or may make such other
> order as is just.

Fed. R. Civ. P. 56(f)(2005).

In an affidavit submitted for purposes of Federal Rule
of Civil Procedure 56(f), Johnson's counsel explains that Johnson
seeks discovery on "the employer's and manager's motive and
intent for the actions taken over a period of time from at least
1996-2000." (Pl.'s Opp'n, Ex. 3 ¶). Johnson seeks discovery
regarding his testimony in the Jackson matter, including when he
testified, how he testified, when a change or potential change in
testimony occurred and the effect that the change in testimony
had or may have had on the actions of his employers. (*Id.*)

At this early stage of the proceedings, Johnson cannot
present facts to fully justify his opposition to the motion for
summary judgment on his retaliation claim. However, he is
entitled to conduct discovery regarding this claim. Accordingly,
the Court will deny the motion for summary judgment on the
retaliation claim.

## IV. Conclusion

For the reasons stated above, the Court will deny Defendant's motion to dismiss and deny Defendant's motion for summary judgment.  An appropriate Order will issue.

August 4, 2005
Alexandria, Virginia

_____/s/_____
James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE

-2-