```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


RONALD A. JOHNSON,              )
                                )
     Plaintiff,                 )
                                )
         v.                     )    1:05cv310 (JCC)
                                )
FRANCIS J. HARVEY,              )
Secretary of the Army,          )
                                )
     Defendant.                 )
```

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff Johnson filed this race discrimination, age discrimination, and retaliation suit against the Army. For the reasons stated below, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment.

### **I. Background**

Plaintiff Ronald A. Johnson, an African American man born on October 6, 1959, was employed by the Department of the Army from 1984 until August 6, 2000. Johnson filed this suit against the Army alleging race discrimination, age discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1).

-1-

For over fifteen years, Johnson worked as a "temporary" and "term" carpenter for the Army at the Carpentry Shop at Fort A.P. Hill ("FAPH") in Virginia.  During that time, Johnson was employed as a WG-1607-9 ("WG-9") carpenter and was subsequently employed as a WG-9 at FAPH working for a government contractor.  This suit arises out of the Defendant's failure to hire Johnson on a permanent basis.

Johnson alleges that in June 2000 Johnson's supervisors hired two unqualified white men who were younger than him, Joe Dougher and Hal Zarecki, despite knowing that Johnson wanted permanent employment.  Dougher and Zarecki were permanent Army employees at FAPH; Dougher was a Police Lieutenant, and Zarecki was a Police Investigator.

In November 1999, Dougher and Zarecki were removed from their law enforcement positions as a disciplinary action for violating hunting regulations.  Bruce Hopkins, a Caucasian male and the Deputy Commander at FAPH, made the decision to temporarily assign them in 2000 to the Carpentry Shop.  They were assigned to permanent positions for which Johnson claims he should have been considered.  Hopkins, Johnson's third-level supervisor, asked Johnson's first-line supervisor Earl Ervin for his input prior to assigning Dougher and Zarecki.  (Def.'s Ex. 4 at 87.)  Ervin's only response was that Dougher and Zarecki were acceptable.  (*Id.*, Def.'s Ex. 3 at 107-08.)

Johnson also alleges that he was not hired for a permanent position in June 2000 in retaliation for signing an affidavit in support of fellow FAPH African American carpenter, Ross Jackson, who had filed a discrimination complaint against Ervin.  Ervin is a Caucasian male and was 46 years old when Johnson was not selected in 2000.  Johnson alleged in his Complaint that Ervin knew about the affidavit and held that against him.

Johnson also alleges that before hiring Dougher and Zarecki in June 2000, his supervisors hired Link Cherry, Steve Peters, Richard Clentimack, and other white men for permanent appointments in 1989, 1996, and 1997.  Johnson claims that he was not hired for these permanent positions in 1989, 1996 and 1997 because of race discrimination.

Johnson contacted the Equal Employment Opportunity Commission ("EEOC") on July 3, 2000.  He filed a complaint with the EEOC on August 31, 2000.  He was provided a right to sue letter on December 16, 2004.  He filed this Complaint on March 21, 2005.  The Complaint alleges claims for: (1) race discrimination for hiring Peters, Clentimack, and Cherry in 1989, 1996, 1997; (2) race and age discrimination for hiring Dougher and Zarecki in June 2000; and (3) retaliation, i.e. not hiring him in June 2000 because he participated in the investigation in support of Jackson's discrimination complaint against Ervin.

Johnson seeks permanent employment at FAPH, back pay, and any other damages to which he is entitled.

On May 19, 2005, Defendant filed a motion to dismiss, or in the alternative, a motion for summary judgment. On August 4, 2005, this Court denied Defendant's motion to dismiss the race discrimination claims for hiring Peters, Clentimack, and Cherry. The Court also denied Defendant's motion to dismiss the race and age discrimination claims for hiring Dougher and Zarecki in June of 2000. Similarly, the Defendant's motion for summary judgment on Johnson's race discrimination, age discrimination, and retaliation claims was denied. On December 29, 2005, Defendant filed a Motion for Summary Judgment on all claims raised in Plaintiff's Complaint. This Motion is currently before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of

material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. A "mere scintilla" of evidence is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 248-52.

A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. *See id.* at 255. Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier

of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

#### A. Disparate Treatment

Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Age Discrimination in Employment Act of 1967 ("ADEA") makes it unlawful for "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Absent direct evidence of discriminatory treatment, the plaintiff must satisfy the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), and its progeny. *See Gairola*, 753 F.2d at 1286. Under the *McDonnell Douglas* test, the plaintiff has the initial burden of establishing a prima facie case of race and age discrimination by showing that: 1) he is a member of a protected class; 2) he was qualified for the job and that his performance satisfied his employer's expectations;

3) he suffered an adverse personnel action despite his qualifications and performance; and 4) the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination.  *See, e.g., Taylor v. Virginia Union Univ.*, 193 F.3d 219, 230 (4th Cir. 1999); *Gairola*, 753 F.2d at 1286.

Once the plaintiff sets forth a prima facie case, the burden of production shifts to the employer "to articulate some legitimate, non-discriminatory reason for the employee's rejection."  *McDonnell Douglas*, 411 U.S. at 802.  Of course, the ultimate burden of persuasion rests with the plaintiff, who must then prove that the reason proffered by the employer was not the true reason for the adverse employment action.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

The plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *See Tx. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973)).  However, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional

discrimination." *Hill*, 354 F.3d at 286 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)).

Plaintiff alleges race discrimination relating to his non-selection to permanent positions which were filled by Clientemack, Peters, and Cherry in 1989, 1996, and 1997.  Johnson has established a prima facie case of race discrimination in regard to these positions.  As an African American, he is a member of a protected class.  He suffered an adverse employment action, namely his non-selection as a permanent employee.  Plaintiff appears to have been performing his job duties at a level that met the Defendant's legitimate expectations at the time of the adverse employment action, and the position was filled by applicants outside the protected class.

Defendant does not appear to contest that a prima facie case has been made in this circumstance.  However, in response, Defendant forwards a legitimate, nondiscriminatory reason for selecting Clientemack, Peters, and Cherry.  Defendant highlights that all three of these men were Priority Placement Program ("PPP") members.  The Army is required by regulation to select PPP members over non-PPP members.  At the time, Plaintiff was not a member of the PPP program.  Because the Army had no discretion but to select PPP members, Defendant has proffered a legitimate, non-discriminatory reason for overlooking Johnson.

Plaintiff does not offer any evidence to suggest these nondiscriminatory reasons are pretextual. In addressing the June 2000 non-appointment, Plaintiff states that he has never cleared the PPP hurdle in the past. Therefore, in failing to adequately rebut Defendant's legitimate, nondiscriminatory reasons for hiring Clientemack, Peters, and Cherry, the Court will grant Defendant's Motion for Summary Judgment in regards to this allegation of race discrimination.

Plaintiff also alleges age and race discrimination surrounding the failure to appoint him to a permanent position in June 2000 at which time Dougher and Zarecki were appointed to positions within the Carpentry Shop.[1] Bruce Hopkins, Johnson's third level supervisor, proffered that Dougher and Zarecki were transferred to permanent Carpentry Worker positions in June 2000. He agreed that based on Johnson's experience, Johnson was more qualified than Dougher and Zarecki who met only minimal qualifications as carpenters. Prior to the carpenter positions, Dougher was a permanent Police Lieutenant and Zarecki was a Police Investigator. Hopkins explained that there were two permanent Grade 9 vacancies that were transferred into a lower Grade 7 and filled without advertising the position and reviewing applicants as part of a last chance agreement. According to

---

[1] This Court will not consider the allegations that in 2002 Plaintiff was denied another permanent position filled by Brad Wales. The Complaint fails to put Defendant on notice of any type of allegations surrounding non-selection following June of 2000.

Hopkins, a last chance agreement can be used during the time permanent employees are facing disciplinary action.  Dougher and Zarecki were facing disciplinary action for violating hunting regulations.  Hopkins also testified that there were other vacancies available for Dougher and Zarecki at the time. Finally, Hopkins said his primary reason for moving Dougher and Zarecki to the carpenters shop was that it was more efficient to move them rather than to do a competitive hire, which takes longer.  As to his second reason, Hopkins said: "although Dougher and Zarecki were not trustworthy – they violated the trust to be law enforcement officers – we felt that they could contribute for a long period of time, because of their youth, at A.P. Hill in other capacities, and that they had made one stupid mistake." (Def.'s Ex. 12 at 31.)

Johnson has established a prima facie case of age and race discrimination.  He: (1) is a member of both protected classes; (2) suffered adverse employment action, i.e. failure to hire him as a permanent employee; (3) appears to have been performing his job duties at a level that met the Defendant's legitimate expectations at the time of the adverse employment action; and (4) the position was filled by applicants outside the protected class.  It should be noted that these applicants were actually less qualified than Johnson.  Since a prima facie case has been presented, the burden shifts to Defendant to articulate

a legitimate, nondiscriminatory reason for the adverse employment action.

Defendant proffers the execution of the last chance agreements as evidence of a legitimate, nondiscriminatory reason for placing Dougher and Zarecki in the carpenter positions rather than Plaintiff. Hopkins wanted to retain the two permanent employees rather than lose them from government service entirely because of their past indiscretions, and he wanted to fill the positions without the burdens of competitive hiring. The Court is not persuaded by Defendant's evidence that there were legitimate, non-discriminatory reasons for failing to hire Plaintiff for one of these positions.

The record is clear that Plaintiff was better qualified for the positions as originally listed as WG-9 positions. In fact, Dougher and Zarecki did not even have the qualifications to fill the positions and therefore the vacancies were reclassified as WG-7 positions. If Hopkins simply wanted to hire Dougher and Zarecki, there were other vacancies at the time for them to fill. Further, Hopkins even testified that they were not trustworthy. This is in comparison to the positive reviews of Plaintiff, who was fully qualified. Finally, because these positions were never open to a competitive process, Plaintiff never had the opportunity to apply for PPP status. Therefore, Plaintiff's status as a non-PPP member does not preclude the Court's finding.

Because Plaintiff has established a prima facie case of race and age discrimination and Defendant has not satisfied his burden of forwarding a legitimate, non-discriminatory reason for hiring Dougher and Zarecki, the Court will deny Defendant's Motion for Summary Judgment on as to the June 2000 positions.

**B. Retaliation**

To state a prima facie case for retaliation, the plaintiff must show that: 1) he engaged in a protected activity; 2) the employer took an adverse action against him; and 3) a causal connection existed between the protected activity and the claimed adverse action. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001). To meet the third requirement, the plaintiff must show that the adverse action would not have occurred "but for" the protected conduct. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365-66 (4th Cir. 1985) *overruled on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). With regard to the third requirement, the plaintiff must also show that the actual decisionmaker, the person principally responsible for the adverse employment action, or someone with disciplinary authority had knowledge that the plaintiff engaged in protected activity. *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 298-99 (4th Cir. 2004); *see also Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

After the plaintiff establishes a prima facie case, the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), analysis applies, and the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the action.  *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).  If the employer does so, the plaintiff must demonstrate that the employer's proffered reasons are pretextual.  *Id.*

Defendant argues that Johnson cannot establish a prima facie case because the decisionmaker on the 2000 job appointments did not have actual knowledge of Johnson's protected activity.[2]  Hopkins and Ervin knew that Johnson was going to testify at the Jackson hearing, but did not know that Johnson was going to testify in favor of Jackson.  (*See* Def.'s Ex. 3 at 101-03, 125-27; Def.'s Ex. 12 at 13.)  Johnson argues that since he told the Defendant that his testimony would actually support Jackson's allegations, and he alleges retaliation against the Defendant, he has established a prima facie case.  In addition, Johnson argues that the temporal connection between the time he notified the Defendant about his testimony in late 1999 or early 2000, the settling of the Jackson case by the Defendant on April 17, 2000, and the hiring of Dougher and Zarecki on June 16, 2000, shows the causal connection.  Finally, Johnson alleges that during this

---

[2] The Court will not consider Johnson's protected activity of filing an EEO complaint in July of 2000 or any allegedly retaliatory actions taken after June 2000 since the Complaint covers activities only up until June 2000.

-13-

time he was given the most difficult jobs and kept constantly working when others had little to do, all in retaliation for his protected activity. Johnson's arguments lack merit.

In order to establish the third element of a prima facie case, Johnson must show that the actual decisionmaker, the person principally responsible for the adverse employment action, or someone with disciplinary authority had knowledge that Johnson was going to testify in support of Jackson. *See Hill*, 354 F.3d at 298-99. *See also Dowe*, 145 F.3d at 657 (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994)(dismissing claim because there was no evidence that relevant decisionmaker knew that plaintiff had complained of discrimination); *Hudson v. S. Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988)(dismissing claim because relevant decisionmaker was unaware that plaintiff had filed a complaint with the EEOC); *Talley v. United States Postal Serv.*, 720 F.2d 505, 508 (8th Cir. 1983)(dismissing claim because no evidence that supervisor who made adverse personnel decision was aware that plaintiff had engaged in a protected activity).

Johnson does not allege that Hopkins, the individual responsible for making the decision, knew that Johnson was going to engage in protected activity by testifying in favor of Jackson. In fact, Plaintiff simply forwards arguments relating to Ervin. Even if Ervin was the appropriate target, Plaintiff

would still not succeed in establishing a prima facie case of retaliation.  Ervin knew that Johnson testified in the January 1997 hearing, when Johnson testified neutrally.  Furthermore, Plaintiff virtually concedes the third element of the prima facie case in stating that "even if Mr. Ervin never found out that Mr. Johnson was prepared to testify in a manner that reflected poorly on him, Mr. Ervin clearly knew that Mr. Johnson participated in an investigation."  (Pltf.'s Opp. 17.)  Simply participating in an investigation is not enough for satisfying the third element of a prima facie case of retaliation.  "[B]y definition, an employer cannot take action because of a factor of which it is unaware;" similarly, an employer cannot retaliate against an employee for engaging in neutral behavior.  *Dowe*, 145 F.3d at 657.  Thus, Johnson cannot make out a prima facie case of retaliation, and as such there is no need to consider any legitimate, nondiscriminatory reasons for the actions taken.  Accordingly, the Court will grant Defendant's motion for summary judgment on the retaliation claim.

### IV. Conclusion

          For the reasons stated above, the Court will partially grant and partially deny Defendant's motion for summary judgment.

February_7__, 2006                _____/s/_____
Alexandria, Virginia                    James C. Cacheris
                                     UNITED STATES DISTRICT COURT JUDGE